## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**Hubert Francila**                                  X
*Plaintiff*,                                         X
                                                     X
v.                                                   X          Case No.
                                                     X
**Chad Wolf**, Acting Secretary, Department          X
of Homeland Security; **Ken Cuccinelli**, Acting     X
Director, US Citizenship and Immigration Services,   X
*Defendants*.                                        X
_____/

## COMPLAINT SEEKING REVIEW OF FINAL AGENCY ACTION
## PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT AND
## ALTERNATIVE REQUEST FOR ISSUANCE OF WRIT OF MANDAMUS

To the Honorable Judge of Said Court:

## I.  INTRODUCTION

Plaintiff brings this action to request that this Court exercise its authority to review a denied Form I-485, Application to Register Permanent Residence or Adjust Status ("Form I-485").[1]  On October 18, 2018, United States Citizenship and Immigration Services ("USCIS") received Plaintiff's Form I-485 for processing.  Via decision dated January 9, 2020, USCIS denied the application via a written decision.  Were the agency to vacate its decision and reopen the administrative proceedings, Plaintiff would request that this Court compel Defendants to adjudicate Plaintiff's Form I-485 within a reasonable period thereafter.

---

[1] This matter was previously before the Court when Plaintiff filed an action seeking judicial review of the same Form I-485.  *See Francila v. Wolf et al*, Case No. 5:20-cv-00144-JSM-PRL (M.D. Fla.).  The Court dismissed this action without prejudice.

## II. PARTIES

1. That the Plaintiff, **Hubert Francila (A 088-616-769)**, is a native and citizen of Haiti.

2. That the Defendant, **Chad Wolf**, is the Acting Secretary of the Department of Homeland Security.  He is responsible for the administration and enforcement of the Immigration and Nationality Act in accordance with 8 U.S.C. §1101 *et seq*.  Defendant Wolf is being sued in his official capacity.

3. That the Defendant, **Ken Cuccinelli**, is the Acting Director of USCIS, an agency of the United States government involved in the acts challenged in this action.  Defendant Cuccinelli is being sued in his official capacity.

## III. JURISDICTION

4. That jurisdiction is conferred by 5 U.S.C. §704.  Plaintiff is aggrieved by adverse final agency action in this case, as the Administrative Procedure Act requires in order to confer jurisdiction on the District Courts, 5 U.S.C. §§702 *et seq.*

5. That this is a civil action brought pursuant to 28 U.S.C. §1331 and §1361 to redress the deprivation of rights, privileges and immunities secured to Plaintiff, by which jurisdiction is conferred, to compel Defendants to perform duties owed to Plaintiff.

6. That the aid of the Court is invoked under 28 U.S.C. §2201 and §2202, authorizing a declaratory judgment.

7. That costs and attorney's fees will be sought pursuant to the Equal Access to Justice Act.  5 U.S.C. §504 and 28 U.S.C. §2412(d), *et seq*.

## IV. VENUE

8. That venue is proper in the Ocala Division of the Middle District of Florida as Plaintiff resides in Lake County, Florida, within the territorial jurisdiction of the Ocala Division.

## V.  REMEDY SOUGHT

9. That Plaintiff asks this Court to review the denial of a Form I-485 in accordance with the Administrative Procedure Act ("APA").[2]  Were Defendants to vacate the agency's January 9, 2020 denial of Plaintiff's Form I-485, Plaintiff seeks aid from the Court to compel Defendants to adjudicate said application within a reasonable timeframe thereafter.

## VI. CAUSE OF ACTION

10. That Plaintiff is a native and citizen of Haiti.

11. That Plaintiff initially arrived in the United States without inspection.

12. That on September 10, 2007, the Department of Homeland Security issued a Form I-862, Notice to Appear ("NTA"), charging Plaintiff with being subject to removal from the United States in violation of 8 U.S.C. §1182(a)(6)(A)(i).[3]

13. That NTA initiated proceedings seeking Plaintiff's removal from the United States.

14. That an Immigration Judge ordered Plaintiff's removal and deportation from the United States on February 9, 2009.

15. That Plaintiff appealed the Immigration Judge's decision to the Board of Immigration Appeals ("Board").

---

[2] 5 U.S.C. § 706(2).
[3] "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

16. That on November 30, 2009, the Board dismissed Plaintiff's appeal via a written decision.

17. That on January 21, 2010, the Attorney General designated Haiti for Temporary Protection Status ("TPS") based upon the 7.0-magnitude earthquake on January 12, 2010 that prevented Haitians from returning safely.[4]

18. That on August 13, 2010, USCIS approved Plaintiff's request for TPS.

19. That during any period in which an alien is granted TPS, the alien can submit a request for a travel document.  This request is made on a Form I-131, Application for Travel Document ("Form I-131"), and a fee is required.

20. That during early 2018, Plaintiff submitted a request for travel authorization and USCIS approved this request on April 13, 2018.

21. That upon approval of a Form I-131, an alien is issued a Form I-512L, Authorization for Parole of an Alien Into the United States ("Form I-512L").  The Form I-512L is presented at a designated port-of-entry and will allow the alien to return to the United States because the Form I-512L confirms approval of the alien's advance request for travel authorization.

22. That on May 27, 2018, Plaintiff departed the United States and traveled abroad.

23. That when Plaintiff presented a Form I-512L to Customs and Border Protection at a designated port-of-entry, he was "paroled" into the United States.  A "parole" stamp was placed on the Form I-512L and in Plaintiff's Haitian passport.

---

[4] *See generally* 8 U.S.C. §1254a; *see also* 83 Fed. Reg. 2648 (Notice January 18, 2018).  *See generally Ramos, et al v. Nielsen, et al.*, No. 18-cv-01554 (N.D. Cal. Oct. 3, 2018); *Saget, et al. v. Trump, et al.*, No. 18-cv-01599 (E.D.N.Y. Apr. 11, 2019) (enjoining the Department of Homeland Security from implementing and enforcing the decisions to terminate Temporary Protected Status (TPS) for Sudan, Nicaragua, Haiti and El Salvador, pending further resolution of the case).

24. That the first "parole" stamp placed in Plaintiff's Haitian passport reflects that he returned to the United States at or near Port Everglades, Florida on or about June 3, 2018.  The "parole" stamp placed in Plaintiff's Haitian passport is designated "TPS."

25. That on July 11, 2017, Plaintiff married Fleurette Francila ("Fleurette"), a citizen of the United States ("USC").

26. That on or about October 18, 2018, USCIS received a Form I-130, Petition for Alien Relative ("Form I-130"), filed by Fleurette on behalf of Plaintiff seeking to accord him an immigrant visa as the spouse of a USC.[5]

27. That concomitantly with the submission of the above-mentioned Form I-130, Plaintiff submitted the Form I-485 that is the subject of these proceedings.

28. That on September 17, 2019, Plaintiff and Fleurette appeared for an interview to determine Plaintiff's eligibility for adjustment of status.

29. That on January 9, 2020, USCIS issued a written decision denying Plaintiff's Form I-485 based on its purported lack of jurisdiction.[6]  Exhibit 1.

30. That the relevant portion of the agency's written decision provides the following :

> "After a thorough review of your application [. . . ], we must inform you that we are denying you application.  USCIS lacks jurisdiction to decide whether you are eligible for adjustment of status, because you are subject to an unexecuted Final Order of Removal issued by an Immigration Judge.
>
> [. . . ]
>
> An alien with TPS may not be deported or removed from the United States during the period in which TPS is accorded.  [citation omitted] An alien with TPS who departs abroad with government authorization, will, upon his or her return to the United States, remain in the same immigration status he

---

[5] *See* 8 U.S.C. §1151(b)(2)(A)(i)
[6] USCIS cites 8 U.S.C. §1404 of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 (MTINA), Pub. L. No. 102-232, 105 Stat 1733, 1749 (Dec. 12, 1991).  This legislation amended the Immigration Act of 1990.

or she had upon departure (unless certain mandatory ineligibility grounds for TPS apply which are also removal grounds.  [citations omitted]  ([A]n alien with TPS who returns to the United States from a trip abroad 'shall be inspected and admitted in the same immigration status the alien had at the time of departure.']  Accordingly, upon your return to the United States on June 3, 2018, you remained a TPS beneficiary subject to a final and unexecuted removal order.

USCIS has jurisdiction to adjudicate an application for adjustment of status filed pursuant to INA § 245 only if the Immigration Judge does not have jurisdiction.  *See* Title 8, Code of Federal Regulation (8 CFR), section 245.2(a), and 1245.2(a).  In general, except if the applicant is an 'arriving alien,' the Immigration Judge has jurisdiction to grant or deny a Form I-485 if the adjustment applicant is in a INA §240 [8 U.S.C. §1229a] removal proceedings before the U.S. Department of Justice, Executive Office for Immigration Review (EOIR).  Since you were not an arriving alien before your departure from the United States, you cannot be deemed to be an arriving alien upon your return to the United States.  [citations omitted] **Therefore, because you are not an arriving alien and you remain subject to a final removal order that was neither terminated nor concluded with your removal or departure under an order of Deportation or Removal, USCIS does not have jurisdiction over your application for adjustment of status.  Based on the above reasons, your application is denied.**"  (Emphasis added).

31. That the highlighted portion of the agency's decision is where Plaintiff's legal interpretation of his travel abroad differs from the agency's legal interpretation.  Plaintiff submits that his initial travel abroad represents "self-removal" and requires the submission of a Form I-212, Application for Permission to Reapply for Admission Into the United States After Deportation or Deportation, to be considered in conjunction with the agency's consideration of Plaintiff's Form I-485.

32. That the agency takes the position that the order of removal entered against Plaintiff and described in ¶16 was never executed.

33. That consistent with 8 U.S.C. §1101(g),[7] Plaintiff's travel abroad executed the final order of removal issued against him during 2009.

34. That Plaintiff submits that his travel abroad made him an "arriving alien" as that term is defined at 8 C.F.R. §1.2.  The regulation provides that:

> "[a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act."

35. That Defendants take the position that Plaintiff is not properly considered an "arriving alien" by virtue of his travel abroad and his presentation of an approved Form I-512L at a designated port-of-entry.

36. That Defendants' position disregards Plaintiff's immigration status as a TPS beneficiary prior to his departure from the United States with a Form I-512L.[8]

37. That upon returning United States with a Form I-512L, Plaintiff remained a a TPS beneficiary.[9]

---

[7] "[A]any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."

[8] 8 U.S.C. §1254a(f)(4).

[9] 8 U.S.C. §1254a(f)(4).

38. That the pertinent language of §304(c)(1)(A) of the MTINA states as follows:

"[i]n the case of an alien … whom the Attorney General authorizes to travel abroad temporarily and who returns to the United States in accordance with such authorization – the alien shall be inspected and admitted in the same immigration status the alien had at the time of departure."

39. That Defendants' interpretation of MTINA is contrary to the plain meaning of the statute and inconsistent with the Immigration and Nationality Act.

40. That "being subject to a final order of removal" is not an "immigration status" as contemplated by §304(c)(1)(A) of the MTINA.

41. That "present in the United States without inspection"  is not an "immigration status" as contemplated by §304(c)(1)(A) of the MTINA.

42. That an alien cannot be "inspected and admitted"[10] as an alien "subject to a final order of removal."

43. That an alien cannot be "inspected and admitted"[11] as an alien "who is present in the United States without inspection."

44. That Defendants' basis for denying Plaintiff's Form I-485 is also contrary to the agency's policy and practice and therefore contravenes §§553 and 706(2) of the APA.[12]

45. That USCIS' policy and practice has historically allowed aliens like Plaintiff to adjust status in similar circumstances and after traveling abroad

---

[10] *See* 8 U.S.C. §1255(a); *see also* 8 U.S.C. §1182(a)(13)(B); *see also* 8 U.S.C. §1182(d)(5)(A).
[11] *See id.*
[12] USCIS Policy Manual, Volume 7, Part A, Chapter 3, Part D—Jurisdiction at: https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-3.

with travel authorization from USCIS.[13]   This policy and practice is consistent with the plain text of the Immigration and Nationality Act.

46. That on December 20, 2019, Defendants posted a statement on the agency's website explaining that the agency was "updating the USCIS Policy Manual to clarify" that "TPS beneficiaries who had outstanding, unexecuted final removal orders at the time of departure, remain TPS beneficiaries who continue to have outstanding, unexecuted final removal orders upon lawful return."[14]

47. That Plaintiff submits that Defendants' "policy clarification" imposes a new standard affecting TPS beneficiaries subject to orders of removal who already traveled abroad under advance parole.[15]

48. That Defendants' new standard is inconsistent with the plain meaning of 8 U.S.C. §1101(g).

49. That Defendants' new standard affecting TPS beneficiaries with final orders of removal is "arbitrary and capricious" and in violation of the APA.[16] When Defendants published the "policy clarification" the agency failed to engage in "reasoned decision making."[17]

---

[13] *Id.*

[14] USCIS, *Policy Alert: Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal* (Dec. 20, 2019), https://perma.cc/5A6E-3Z5P (emphasis added) (hereinafter the "TPS Policy Alert").

[15] *See* 5 U.S.C. §551(4) (defining the term "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing[.]")

[16] *See* 5 U.S.C. §706(2)(A).

[17] *Michigan v. EPA*, 576 U. S. 743, 750 (2015) (internal quotation marks omitted).

50. That Defendants new standard carries legal force affecting TPS beneficiaries and therefore requires "notice and comment" rulemaking consistent with 5 U.S.C. §553.

51. That under the APA, rules must be published 30 days before any proposed effective date and "[g]eneral notice of proposed rule making shall be published in the Federal Register."[18]

52. That agencies must "give interested persons an opportunity to participate in the rule making."[19]

53. That as of the filing of this complaint, Defendants have not provided any opportunity for interested parties to submit comments regarding the legal and socioeconomic effects of the new standard affecting TPS beneficiaries.

54. That Plaintiff submits that Defendants' new rule is unlawful and must be set aside.[20]

55. That Defendants' January 9, 2020 denial of Plaintiff's Form I-485 represents "final agency action" within the meaning of 5 U.S.C. §702.

56. That Plaintiff has suffered a "legal wrong" within the meaning of 5 U.S.C. §704.

57. That Plaintiff seeks the aid of this Court in reviewing "final agency action" pursuant to the APA and as discussed herein.

58. That there is no other reasonable remedy at law which will result in a timely resolution of the issues described above.  Plaintiff's causes of action arise from administrative action wrongfully denied pursuant to the APA and Plaintiff seeks judicial review of the same pursuant to 5 U.S.C. §706(2).

---

[18] 5 U.S.C. §553(b), (d).
[19] 5 U.S.C. §553(c).
[20] 5 U.S.C. §706(2)(D)

59. That were the agency inclined to vacate its January 9, 2020 decision denying Plaintiff's Form I-485, Plaintiff invokes the aid of the Mandamus Act and the APA in compelling Defendants to adjudicate Plaintiff's application consistent with applicable statutory provisions, regulations, and policy guidance.  Further, Plaintiff would request that the agency be required to adjudicate the reopened Form I-485 within a "reasonable" timeframe as based on the initial receipt of Plaintiff's Forms I-485 by Defendants.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court:

1. Accept jurisdiction and maintain continuing jurisdiction of this action;

2. Conduct such hearings and examinations of Plaintiff as necessary to determine that the relief requested by Plaintiff is warranted as a matter of law;

3. Declare Defendants' actions in the proceedings below as arbitrary and capricious, an abuse of discretion and not in accordance with the law pursuant to 5 U.S.C. §706(2);

4. Were the agency to vacate its decision, Plaintiff would ask the Court to issue a preliminary and permanent injunction pursuant to 28 U.S.C. §1361 and 5 U.S.C. §706(1) compelling Defendants to adjudicate Plaintiff's Forms I-485 within a reasonable period of time;

5. Declare Defendants' new rule regarding TPS beneficiaries unlawful;

6. Vacate and set aside Defendants' new rule regarding TPS beneficiaries;

7. Enjoin Defendants from processing and adjudicating applications under the new rule regarding TPS beneficiaries and to re-process any applications unlawfully denied based upon the new rule affecting TPS beneficiaries;

8. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 28 U.S.C. § 2412.

9. Grant such other relief as this Court may deem just and proper.

Respectfully submitted,


/s/  David Stoller  /s/
David Stoller, Esquire
Attorney for Plaintiff
Florida Bar #92797
4445 S. Conway Rd.
Orlando, Florida 32812
Phone: (407) 999-0088
Fax: (407) 382-9916
Email: david.stoller@davidstollerlaw.com

**Table of Contents**
**Documents in Support of Complaint**

**Hubert Francila v.**
**Chad Wolf, Acting Secretary, Department of Homeland Security,** *et al.*

**Exhibit 1** :   Notice of Decision denying Form I-485 (January 09, 2020);

**Exhibit 2** :   Form I-512L, Authorization for Parole of an Alien Into the United States;

**Exhibit 3 :**   Copy of Plaintiff's "Paroled" Stamp on Haitian Passport;

**Exhibit 4** :   Form I-821, Application for Temporary Protected Status;

**Exhibit 5** :   Copy of USCIS's Notice for Temporary Protected Status Designated Country:
Haiti;

**Exhibit 6** :   Form I-797C, Notice of Action; Approval Notice Form I-130
(MSC-19-900-94734);

**Exhibit 7** :   Form I-797C, Notice of Action; filing receipt Form I-485
(MSC-19-900-94733).